UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHAWN MARIE MARTIN, <br><br> Plaintiff, <br><br> v. <br><br> NAVIENT SOLUTIONS, INC., <br><br> Defendant. | CIVIL COMPLAINT <br><br> CASE NO. 1:17-cv-00307 <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW comes SHAWN MARIE MARTIN ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of NAVIENT SOLUTIONS, INC. ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 and the Indiana Deceptive Consumer Sales Act ("IDCSA") under I.C. 24-5-0.5 for Defendant's unlawful practices.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Southern District of Indiana and a substantial portion the events or omissions giving rise to the claims occurred within the Southern District of Indiana.

## PARTIES

4. Plaintiff is a 52 year old natural person residing at 4935 Wicks Drive, Apartment C, Indianapolis, Indiana, which falls within the Southern District of Indiana.

5. Plaintiff is a "person" as defined by 47 U.S.C. §153(39).

6. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

7. Defendant is the largest servicer of student loans in the United States with its principal place of business located at 123 Justison Street, Wilmington, Delaware.  Defendant is engaged in the business of collecting or attempting to collect, directly or indirectly, student loans owed or due or asserted to be owed or due to others using the mail and telephone across the country, including in Indiana.

8. Defendant is a "person" as defined by 47 U.S.C. §153(39).

9. Defendant is a "supplier" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(3).

10. Defendant's collection calls to Plaintiff were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

11. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSES OF ACTION**

12. Beginning in approximately June 2015, Plaintiff began receiving phone calls from Defendant to her cellular phone, (317) XXX-6616. *Id.*

13. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the above cellular telephone ending in 6616. Plaintiff is and has always been financially responsible for the cellular phone and its services.

14. Defendant has used the following phone number to call Plaintiff's cellular phone, including but not limited to: (888) 913-7654, (703) 763-0111, (585) 445-6797, (317) 550-5616, (302) 261-5781, (877) 931-7676, (570) 241-0311, (585) 445-6800, and (585) 445-6799. *Id.*

15. Upon information and belief, the aforementioned phone numbers are regularly used by Defendant to contact consumers during its collection activities.

16. Plaintiff was unaware as to how Defendant obtained her information, as she never entered into an obligation for a student loan through it, nor co-signed on any student loan. *Id.*

17. When Plaintiff answers calls from Defendant, she is often greeted with a pre-recorded message before a live representative comes on the line. *Id.*

18. Upon speaking with one of Defendant's representatives, Plaintiff was told that it was looking to speak with an individual named "Charles Martin," in order to collect upon an outstanding student loan debt. *Id.*

19. Plaintiff has a brother named "Charles Martin," however, she did not co-sign on his student loan and he does not reside or share a phone number with her. *Id.*

20. Upon hearing this prompt, Plaintiff notified Defendant that she was not the individual it was looking for and demanded that it stop contacting her. *Id.*

21. Defendant assured Plaintiff that her phone number would be removed from its call list. However, against its representations, Defendant continued to call Plaintiff. *Id.*

22. Defendant called Plaintiff's cellular phone multiple times during the same day asking for the same individual, even after being notified that it was calling the wrong person and to cease contacting her. *Id.*

23. Defendant has called Plaintiff's cellular phone not less than 100 times. *Id.*

24. Frustrated over the persistent calls, Plaintiff spoke with Sulaiman regarding her rights resulting in costs and expenses.

25. With the goal of specifically addressing Defendant's conduct, Plaintiff has expended approximately $46.00 to purchase and maintain an application subscription on her cellular phone to block the calls, resulting in pecuniary loss. *Id.*

26. Plaintiff has suffered financial loss as a result of Defendant's actions.

27. Plaintiff has been unfairly harassed by Defendant's actions.

28. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies solicitation telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of her telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on her cellular phone, and diminished space for data storage on her cellular phone.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

29. Plaintiff repeats and realleges paragraphs 1 through 28 as though fully set forth herein.

30. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") without their consent.

The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

31. Defendant used an ATDS in connection with its communications directed towards Plaintiff. The recorded message that Plaintiff experiences during answered calls before being connected to a live representative of Defendant is instructive that an ATDS is being used. Similarly, the frequency and nature of Defendant's contacts strongly suggests that a predictive dialing ATDS was being used to generate them.

32. Defendant violated the TCPA by placing calls to Plaintiff's cellular phone using an ATDS after Plaintiff revoked consent. Plaintiff had no prior relationship with Defendant, as she never entered into an obligation for a student loan with it. Defendant has contacted Plaintiff an exhaustive amount of times seeking to collect upon her brother's student loan. Because Plaintiff did not co-sign on her brothers loan, it is very unlikely she ever provided Defendant with consent to contact her. However, even if she did give Defendant such permission, Plaintiff explicitly rescinded any hypothetical consent by her demands to cease contact.

33. The calls placed by Defendant to Plaintiff were regarding debt collection and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

34. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C). Defendant willfully acted in defiance of a long string of demands by Plaintiff to cease its conduct.

WHEREFORE, Plaintiff, SHAWN MARIE MARTIN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendant to cease contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

35. Plaintiff repeats and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Defendant violated I.C. 24-5-0.5-3 (a) and (b)(19) by engaging in an unfair, abusive and deceptive practice through its systematic collection efforts towards Plaintiff.

37. The IDCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19).

38. Defendant engaged in unfair, abusive and deceptive behavior in its transactions with Plaintiff. Through systematic and frequent collection attempts, Defendant has used an ATDS to relentlessly contact Plaintiff. Defendant was specifically notified by Plaintiff that it was calling

the wrong person, as the debt did not belong to her.  Plaintiff never gave consent to Defendant and is unaware as to how it obtained her information.  Even so, Plaintiff still told Defendant to stop calling, which would revoke any hypothetical consent that Plaintiff may have given, which she did not.  Defendant consciously ignored Plaintiff's demands, despite representations that it would stop, in an abusive attempt to collect payment.

39. In placing its onslaught of phone calls to Plaintiff's cellular phone, Defendant used not less than nine different phone numbers.  Instead of ceasing its contacts to Plaintiff upon being notified that the debt did not belong to her and to stop calling, Defendant continued its calling campaign using a plethora of phone numbers with various area codes.  This was done in an unfair and deceptive manner in an attempt to trick Plaintiff into answering it calls.

40.  In violating the TCPA, Defendant engaged in illegal and fraudulent behavior during its collection efforts towards Plaintiff.   Defendant intended that Plaintiff rely on its illegal behavior. The IDCSA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

41. The IDCSA further states:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater.  The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)."  I.C. 24-5-0.5-4(a)(1)(2).

42.  Defendant's conduct is part of a purposeful and systematic scheme to illegally collect upon unsophisticated consumers who may not be aware of their rights.  Defendant's conduct is an incurable deceptive act of which notice would not remedy.  Through fraudulent conduct, Defendant represented that it had the legal ability to contact Plaintiff via an ATDS.

43. Although unsuccessful, Plaintiff made attempts to correct Defendant's incurable deceptive acts by notifying it that it was contacting the wrong person and demanding that it cease contacting her. However, Defendant's conduct is an incurable deceptive act of which notice would not remedy. The fact that Plaintiff provided notice to Defendant that the debt did not belong to her and to stop calling further highlights that its behavior is incurable.

44. Defendant's conduct is also part of a systematic scheme to fraudulently contact consumers in Indiana. Upon information and belief, Defendant conducts the same type of behavior on a wide and frequent basis, which goes against the state's goal of preventing the phone from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.

45. In addition to inhibiting Plaintiff's time and energy, as pled in paragraphs 23 through 28, Plaintiff has suffered numerous damages as a result of Defendant's unlawful solicitation practices. Plaintiff is entitled to relief pursuant to I.C. 24-5-0.5-4(a)(1)(2).

WHEREFORE, Plaintiff, SHAWN MARIE MARTIN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

d. Enjoining Defendant to cease contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: January 30, 2017						Respectfully submitted,

							s/ Nathan C. Volheim
							Nathan C. Volheim, Esq. #6302103
							Admitted in the Southern District of Indiana
							Sulaiman Law Group, Ltd.
							900 Jorie Boulevard, Suite 150
							Oak Brook, Illinois 60523
							(630) 575-8181 x113 (phone)
							(630) 575-8188 (fax)
							nvolheim@sulaimanlaw.com